My opening argument or statement is going to be brief. Jurisdiction was proper because the arrest was... You have to keep your voice up because we're recording. Jurisdiction was proper because the arrest of the vessels was undisputed. There was a stipulation, which was undisputed, for release and a substitute security. Under a public national bank, once jurisdiction is proper, it's never lost. Summary judgment was improper because there were facts disputed with regard to the release of the security. Jurisdictional facts? Yes. And aren't those normally decided by a court exactly as this court decided the issue? Not when jurisdictional facts are in dispute and go to the merits of the underlying issue. So what should have been done? What was the court required to do in your judgment? What kind of a trial? A full-blown hearing on the issue of the release... Of the jury? No. For the judge. And that's my point. And it seems to me that's exactly what the trial court did here. Held a hearing, took a look at all the evidence, and made a decision. I don't understand where you want to go with this triable facts question. Well, for example, the U.S. District Court recognized that this... Could you speak up just a little? Even more? Oh, yeah. Should I bring these in? No, just talk loud. Okay. The United States District Court recognized... Just get mad and start... All right. How's that? Is that better? Good. The United States District Court recognized that the release by Mr. Damon in August of 2000 was a mistake. And even given that finding, he still found, well... Well, you see, that's my point, is the facts have been determined by the court in precisely the manner in which we expect the facts to be determined by the court. If we agree with you and send it back and say, no, there's genuine issue of material fact here, what do you expect the court to do? I expect... They won't bring in a jury. Okay. The judge will say, okay, what other evidence do you have? Is there other evidence? No, I see your point. No, that's the point. I see your point. Your point is here. My point is here. The judge didn't follow Republic National Bank. And he didn't follow Stephen Doering Services because jurisdiction was never lost. And if the court is recognizing, yeah, there's a mistake with regard to release, he cannot rely on Alaska. Now you're saying there was a legal error that was made by the time... That's exactly it. Okay. It's not a question of the facts. We know what the facts are. Okay. And they argue that the court screwed up the facts, but it's a legal error. The problem I have is this appears to have been not an impersonum case in any respect whatsoever. It was in rem. And the race is gone. Now let's say that we were to agree with you. What would you ask the district court to order? Order defendants to reinstate the rest. See, that's the problem. There's no impersonum jurisdiction. How do you order the defendants to reinstate when there's no jurisdiction over people? It's only in rem. Their stipulation, which is in the excerpts of the record, said that they wouldn't demand release. Get mad now. Come on. Their stipulation, which is in the excerpts of the record, said they would not demand release during the pendency of appeal. But it's gone. They have it. It's gone. They have it. If they have it, they took it by hook or by crook, whatever the finding is. And what case? They can give it back. What case? But see, you have to order them. Okay. Let's look at... No jurisdiction over them, people, impersonum. And that's what's missing here is no jurisdiction over the people. So what cases you can order them? The polar case that you point to was an impersonum case. What about industrial papel? What about it? What about it? That case says you can. You can reinstate it, and you can compel them in personam. You either put the res back where it belongs, or if you're not, you're going to be subject to an impersonum jurisdiction. That's the equitable power of the... That's the equitable power of the court. And that's what we're asking this court to do. By hook or by crook, they got their hands on it. But like in all the other cases, when the defendants got their hands on it... Right. And that case wasn't addressed by the other side. No, it wasn't. So we'll have to ask the other side what they think about that case. That's the only case I spotted that gives you half a chance. But there the race was released through fraud, misrepresentation, or a mistake. And here, you know, if you look at the district court and you acknowledge what the district court said, I don't find any fraud, misrepresentation, or mistake. The district court says, yes, Mr. Damon's release was a mistake. Okay. And then the other point that I want to make was, is the facts surrounding the second release actually were in dispute, whether or not that was a fraud, misrepresentation, or mistake. You have a demand for release made on somebody who is not counsel of record in this case. And it's not made to counsel of record in this case. And they're claiming, oh, we never made a demand for release. It was strictly voluntary. But that was the fact that was in dispute. If you have the first one recognized by the U.S. district court as a mistake and you have disputed facts with regard to the second one being involuntary, we fall in the middle. Your client hasn't been paid, I take it. My client has not been paid. The problem is there are mistakes and then there are mistakes. This doesn't seem to me to have been a mistake. It may have been a dumb move. But everybody knew exactly what was going on. No, that's not the case. Because if everybody knew exactly what was going on, then appellant counsel would have been asked and appellant counsel would have told the other sides, what about your stipulation? Go pound sand. They violated their stipulation. Their stipulation was given in exchange for release of the vessels, not the vegetables. Their stipulation was given in exchange for release, a substitute security. So that is a secured stipulation. If you look at Alaska, it says if the court still has possession of those stipulations, that can be the res or the security. And the law is that if it's an in rem action that you can't agree that the ships can be sold as long as there's substitute security, as long as they were there when it was initiated. Correct. See, the district court says, okay, it is a motion to reinstate plaintiff cites industria nacionale for the principle that acts. Industria nacionale is an apposite because the issue before the court in industria nacionale was whether the district court could order an increase in the amount held in the bond after the ship had been released. The industria nacionale court held that it was inappropriate to require claimants to post additional bond because the mistake as to the amount held in the bond was not tinged with fraud or misrepresentation and was not caused by the district court. So what's your answer to the district court? My answer as to the mistake is it was caused by fraud or misrepresentation. You have a violation of their stipulation. They're violating their own stipulation. The stipulation they submitted to get their boats released by making the demand. Did the district court conclude there was fraud and misrepresentation? No, it didn't. No. But that gets us back to the factual dispute on summary judgment. Okay. So then your argument is this is a clearly erroneous determination of jurisdictional facts. Well, what did the district court do wrong? That's in your view. Did the district court fail to recognize that there was a substitution of security? Well, that's one of the issues. What the district court did was said, well, the ships are gone. You defendants have the money. I'm washing my hands of this. But what the district court didn't look at was the fact that the stipulation said defendants will not act and will not do a certain act. Defendants went outside of their agreement. That was the requirement for the release. So defendants essentially breached a document that they would file. Call it contempt. Call it breach of contract. They breached the condition upon which the ships were released. Let me let me ask you. I'm from the great maritime state of Arizona. Okay. The Port of Phoenix. Right. Not yet. The home of the USS Arizona. Well, what's left of it. It's my understanding that frequently there will be an in rem action against ships, but that the owner of the ships wants to use the ships in order to make money. And so there's an agreement that the ships can be used. They may leave the jurisdiction, but there's a substitution of security. Is that your understanding? That's exactly what happened in this case. And you're saying that's what happened in this case, and then what happened after that? What happened after that, we went through a whole appeal. There was a summary judgment grounded on the maritime lien issue. We went through the whole appellate process. During that appellate process, unbeknownst to appellate counsel, demands were being made from the security from prior counsel, prior trial counsel. The appellate counsel was in the dark. While Judge Trott was writing his opinion. No. While the initial appeal was being briefed, before it was even argued, before it was being argued, demands were being made for the security. So while that was being briefed, if this issue was valid, why didn't they raise it at the initial oral argument on the initial jurisdiction argument under the Maritime Lien Act? That's the question I have. Because the appellate was already gone? Yes. It was. They had obtained the security before we even argued the first appeal. It was a fraud. Fraud on the Ninth Circuit. And fraud on the best bet. Fraud on all your houses. Okay. Maybe we should hear from the other side. I think that's a good idea. Thank you, Your Honors. There wasn't a breach of the stipulations. The stipulations allowed for release of the security under three circumstances, a written agreement of the parties, a further order of the court, or a final judgment after appeal. Arguably, the first two of those applied. But there wasn't any breach. The checks showed up in the mail. It was a total surprise to me. They were unsolicited. It happened before the time to move for a stay had expired. The record shows that the release of the cash security was not demanded, not solicited, and came as a surprise to me. So a big mistake. The cash security was So what did you do? I sent the checks to the client and said deposit these. What was left was the bond. And I didn't know what to do about the bond. And I just thought I'd wait and allow events to develop. At some point, the clients asked, and this is in the record, asked me, so where's the bond? And I wrote the letter in December later that year saying, you said you're returning all the security you have, but you forgot the bond. And then the bond turned up. And it turned up after the appellants had filed and served their opening brief in the first appeal, and a couple of weeks before Abhilay's brief was due, in the first appeal. What did you think was going on when this was happening? I mean, this was rather bizarre, wasn't it? I was stunned. You could have knocked me over with a feather. That's right. I thought Mr. Damon, Appellant's Ventura Packers Counsel, must have thought that after Republic National Bank, you don't need a race anymore. And several times I researched it and I saw the language in Ankara, and it was not until I had to figure out what it meant that I understood what the law was. But I could understand where he could see that. But if you look down the line, even if you believe that that's what Republic National Bank says, that you don't need a race, you have this practical problem of what do you do if you get a judgment and there's no race? So we proceeded on appeal on the basis there wasn't a maritime contract, and so no maritime contract jurisdiction. That was the basis that I believe there was no subject matter jurisdiction. There was this possible other basis there was no subject matter jurisdiction, but it hadn't been addressed by the district court. It wasn't a reason why the district court didn't have subject matter jurisdiction, so I didn't raise it in our brief or oral argument, because we had this other reason why there was not subject matter jurisdiction. And the Ninth Circuit panel disagreed with me, but I thought there was a lot of support for our position. Where does that all leave us? Well, it leaves us with a mistake that I don't see any way of reversing. You can imagine all these scenarios where there could be in personam jurisdiction, but in order to get there, the district court has to have jurisdiction. Well, the district court has jurisdiction. Once there's jurisdiction over the raise, then that jurisdiction is maintained. With a big qualification, unless any judgment would be useless. Well, how would judgment be useless if they got a judgment? Say they got a judgment against the ships. It would be useless because they cannot be reused. They cannot be re-arrested once they're released. The lien is transferred forever to the security. We cited cases in our brief that shows that the vessels cannot be re-arrested for the same claim. Aren't those cases where the initial security turned out to be arguably inadequate and they wanted to increase the security, so they wanted to re-arrest the ships? That's what those cases were about. That's a little different situation. The rule, and it's accepted and it's called settled, and we gave the cases in our brief that says the rule is settled, that when you accept substitute security for the vessels and release the vessels, the lien on the vessels is transferred forever and the vessels cannot be re-arrested for the same claim. Now, they chose not to bring this up. Were there two law firms doing this? There were two law firms representing Ventura Packers. First, Brighton, Mr. Damon's law firm, Brighton Powell, and then Ms. Bronia's firm. And you knew that the money had come from the former firm, the first firm? With a cover letter that was cc'd to Mr. Bartosz, and it came in the mail on the same day that the notice of appeal came, the substitution of counsel came, and the representation statement came. So in your view, the case was over? No, I didn't. I mean, I'm just wondering what? If what you're arguing here is true, it was true then. That's right, but I hadn't entirely figured it out. I had a client who had, a partner who had this issue in another case, and we had talked about the import of Republic National Bank, and he was of the opinion that no judgment could ever be useless because it could always be used in another action. But he was thinking of his case in which the in-rem elements were the same as the elements in a prosonim claim. Do you think it's an ethical obligation to pick up the phone and say what's going on here to somebody? When you were stunned? Yeah. I was stunned speechless. That's why you couldn't pick up the phone. And I didn't know what to do. And I can tell you that several times I reread Republic National Bank and the Ninth Circuit's opinion in the Ankara case, and the Ninth Circuit in the Ankara case says a stay is no longer required to preserve appellate jurisdiction. You can't call this lawyer up to send you a check and say, why the hell are you sending me this money? I have an ethical obligation to represent my clients and do the best I can for them. I didn't know what was going on, but I knew when my client's money was back. You knew something was screwy. And the other side thought that what they were doing was all right in light of Republic National Bank. Is that what they told you? I don't remember any telephone conversation or conversation I had with them at all. You knew that there were two tracks going on here, that there was a trial counsel and then there was an appeal going forward. Well, I knew that. Judicial estoppel applied to this situation? I don't think we were required to give every reason why we thought there was no subject matter jurisdiction. The basis of our first appeal is that there was no subject matter jurisdiction because there was a Ninth Circuit panel decision that said that, because other circuit courts had said that, because the Supreme Court's Exxon v. Central Gulf Lines presumed that. Otherwise, they wouldn't have had to ask whether the contract before them was a maritime contract. So I thought we had a very strong basis that once we had a determination that didn't seem to be clearly erroneous, that there wasn't a maritime contract, then there wasn't subject matter jurisdiction. And the subject matter jurisdiction issue had been fully briefed in the district court. That was the basis of the appellant's briefing in the Ninth Circuit Court of Appeals. And so I just proceeded on the same basis. This is the reason there's no subject matter jurisdiction. It seemed a lot clearer than the arguments that we were having right now. Although when I had to read all the cases preceding Republic National Bank and after it, I understand them better now than I did then. You know, we have this First Circuit case, Fred M. Lawrence, and it tells us this. I'm reading. The general rule, no doubt, is that after the release upon stipulation of a vessel arrested in an admiralty suit in rem, she cannot again be arrested in the same suit or upon the same cause of action. Although this rule has been sometimes stated as if it admitted of no exception, that does not absolutely preclude the court from ordering such re-arrest when necessary to secure complete justice between the parties. And when no substantial right of the claimant is thereby prejudiced, it seems to us sufficiently recognized. Well, the substantial rights of the claimants that would be violated by not following the rule. And this case could have been brought in personam. It wasn't. The time to bring any in personam claims has long since expired. The principle of the appellant is suing my clients in other jurisdictions. Well, in other words, what you're saying is the appellant's lawyer screwed up and your client gets the benefit of it. Yeah. Well, I think it was a mistake. And I think I have an ethical obligation to take advantage of a mistake if it's there for the benefit of my client. I think we understand your position. Thank you. Briefly. Briefly. Ms. Shield got up and represented to the court that she was completely surprised by what happened and that there was no demand from her with regard to soliciting the return of the security. Page 7 of our opening brief cites all of the demands. In addition, the excerpts of the record contains letters to and from Ms. Shield with regard to the demand. In particular, page 574 of the excerpts of record, which is her December 14th letter to Michael Damon, who is no longer counsel of record for Ventura Packers, expressly demanding the return of the security. So yet another fraud on the court, I'm ashamed to say. Judicial estoppel should apply. She knew about this before. It's another case of hide the ball. The tactical mistake or taking advantage of the mistake thwarts the underlying principles of Republic National Bank. That's all I have to say. Thank you. But you have to approach it very briefly. The record shows I did not demand the cash security before it was returned. There's my declaration. There's what I've said here today. And the declaration submitted by Mr. Damon does not say anything to the contrary. But was there a demand after it was returned for its return return? No. Okay. Not a pretty case. Okay. Case to start is submitted. We'll hear the next case, Arvizo versus Norton. And the ring call. Still not too late to settle this case. We'll be happy to vacate submission if you notify us that the case is going to sell. And you can always avail yourself of the services of our mediators in San Francisco. We'd be happy to send one down to Santa Barbara. You hear what I said? Yep. I think so. All right.
judges: Schroeder, Pregerson, Trott